UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. 1:23-cv-592 ) |
| v. | ) COMPLAINT ) |
| THE PHOENIX CENTER INC., | ) JURY TRIAL DEMAND ) |
| Defendant. | ) ) ) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended, (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Amber Wilson ("Wilson"), Stephanie Carter ("Carter"), and other presently unidentified individuals.

The Equal Employment Opportunity Commission ("EEOC") alleges that The Phoenix Center, Inc. ("Defendant"), subjected Wilson to a pre-offer medical inquiry and failed to hire her because of her disability, chronic migraine disease, or because she was regarded as disabled. Defendant terminated Carter because she was regarded as disabled or because of her record of disability, alcoholism. The EEOC further alleges Defendant subjected applicants to unlawful pre-offer medical inquiries.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Southern District of Ohio.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, The Phoenix Center, Inc., has continuously been doing business in the State of Ohio and the City of Wilmington, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Amber Wilson and Stephanie Carter filed charges with the EEOC alleging violations of the ADA by Defendant.

8. On April 20, 2023, the EEOC issued to Defendant Letters of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. On May 31, 2023, the EEOC issued to Defendant Notices of Failure of Conciliation advising Defendant that the EEOC was unable to secure from Defendant conciliation agreements acceptable to the EEOC.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least October 2020, Defendant has engaged in unlawful employment practices at its Wilmington, Ohio and additional Ohio facilities, in violation of Sections 102(a) and 102(d)(2)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (d)(2)(A). Specifically, Defendant subjected Wilson to a pre-offer medical inquiry and failed to hire her because of her disability, chronic migraine disease, or because she was regarded as disabled terminated Carter because she was regarded as disabled or because of her record of disability, alcoholism; and subjected applicants to unlawful pre-offer medical inquiries. The unlawful practices include the following:

### Amber Wilson

13. At all relevant times, Wilson has been a qualified individual with a disability under Sections 3(1)(A) and 3(1)(C) of the ADA, 42 U.S.C. §§ 12102(1)(A) and (1)(C), who, under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), can perform the

3

essential functions of Defendant's Case Manager position with or without reasonable accommodation.

    a.    Wilson has a physical impairment, chronic migraine disease, that substantially limits major life activities.

    b.    Defendant regarded Wilson as having a disability by subjecting her to an adverse employment action, failure to hire, because of an actual or perceived impairment, chronic migraine disease.

    c.    Wilson's physical impairment, chronic migraine disease, causes her frequent and severe headaches resulting in visual, sensory, and motor disturbances including vision loss, nausea, dizziness, and sensitivity to light. She also experiences constant pain, numbness, and weakness in her arms, which, during the relevant time period, she and her doctor attributed to her chronic migraine disease.

    d.    Wilson's chronic migraine disease substantially limits her major life activities, including seeing and the operation of the major bodily functions of her brain and neurological systems.

    e.    To treat her chronic migraine disease, Wilson has been legally prescribed various medications since before August 2021.

14.    Defendant discriminated against Wilson when it subjected her to a pre-offer medical inquiry and refused to hire her because of her disability, chronic migraine disease, or because it regarded her as disabled, in violation of Section 102(a) of the ADA.

    a.    On or about August 25, 2021, Wilson interviewed with Clinical Manager Raejean Noble ("Noble") for a Case Manager position. During the interview Noble asked Wilson if she

took any controlled substances. Wilson revealed that she took Zanaflex for migraines, but that she did not know if it was a controlled substance.

  b.  On or around September 1, 2021, Wilson was offered and accepted the position of Case Manager.

  c.  Before she started in the Case Manager position, Wilson stopped taking Zanaflex, and started taking the legally prescribed medications Fioricet and Gabapentin.

  d.  On or about September 24, 2021, Wilson informed Office Administrator Samantha Lomske ("Lomske") that while she was taking Zanaflex for migraines at the time of her interview, she had switched to taking Fioricet and added Gabapentin.

  e.  Lomske consulted with Human Resources Director Ashley Carrico ("Carrico") about Wilson's medications. Carrico told Lomske via e-mail that Wilson "cannot be on Gabapentin."

  f.  On September 24, 2021, Lomske emailed Wilson, "Unfortunately, [G]abapentin is a controlled substance and employees are unable to take that medication while working at The Phoenix Center. If you are able to stop the medication and can pass the drug screen on your first

day of employment, your start date still stands. If you are unable to stop the medication and would like to cancel your start date, please let me know…"

      g.      Wilson told Lomske she did not wish to stop taking her medication due to her medical conditions. Because Defendant would not employ her if she continued to take her legally prescribed medication, Wilson had no choice but to decline the Case Manager position.

      h.      In August 2021, Defendant discriminated against Wilson when it subjected her to a pre-offer medical inquiry, in violation of Section 102(d)(2)(A) of the ADA.

      i.      In September 2021, Defendant discriminated against Wilson when it refused to hire her because of her disability, chronic migraine disease, or because it regarded her as disabled, in violation of Section 102(a) of the ADA.

### Stephanie Carter

15.      At all relevant times, Carter has been a qualified individual with a disability under Sections 3(1)(B) and 3(1)(C) of the ADA, 42 U.S.C. §§ 12102(1)(B) and (1)(C), who, under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), can perform the essential functions of Defendant's Case Manager position with or without reasonable accommodation.

      a.      Defendant regarded Carter as having a disability by subjecting her to an adverse employment action, termination, because of an actual or perceived physical impairment, alcoholism.

      b.      Carter has a record of a physical impairment, alcoholism, that substantially limits her major life activities.

      c.      Carter obtained sobriety on or about January 19, 2014.

      d.      Before Carter obtained sobriety, her daily alcohol use resulted in frequent intoxication, blackouts, a deterioration in her ability to eat and sleep regularly, and damage to her

liver.

  e. Before Carter obtained sobriety, she was substantially limited in major life activities, including the operation of the major bodily functions of her brain, liver, and digestive and neurological systems.

  16. Defendant discriminated against Carter on the basis of disability when it terminated her because she was regarded as disabled or because of her record of disability, alcoholism, in violation of Section 102(a) of the ADA.

  a. Carter was hired as a residential housing staff member on October 12, 2020.

  b. During Carter's interview, she revealed to Clinic Director Charlie Gorman ("Gorman"), that she was a recovering alcoholic.

  c. On February 22, 2021, Carter was promoted to Case Manager.

  d. Throughout Carter's employment, Defendant had a Drug Free Workplace policy that stated zero-tolerance for relapse.

  e. On November 3, 2021, Carter admitted herself to the hospital for alcohol poisoning.

  f. On November 4, 2021, Carter was released from the hospital without restrictions.

  g. Carter has maintained her sobriety since she was released from the hospital on November 4, 2021.

  h. After she was released from the hospital, Carter informed her supervisor Stephanie Bowman that she had relapsed and been hospitalized, but that she was out of the hospital and able to return to work without restriction on November 8, 2021.

  i. On November 8, 2021, Carter met with Gorman and CEO Morgan Larkin ("Larkin"), who told Carter that she needed to resign and enter an alcohol treatment program and

that she could not remain employed during the treatment period because Defendant had zero-tolerance for relapse.

j. On November 8, 2021, Defendant terminated Carter's employment because it regarded her as disabled or because of her record of disability, alcoholism, in violation of Section 102(a) of the ADA.

### Unlawful Pre-offer Medial Inquiries

17. Beginning in at least October 2020, Defendant has maintained a policy or practice of subjecting applicants for employment to medical inquiries prior to making bona fide offers of employment, in violation of 42 U.S.C. § 12112(d)(2)(A).

18. Defendant has used the information obtained from pre-offer medical inquiries in making employment decisions, for example, refusing to hire Wilson because of her response to the unlawful inquiry, in violation of 42 U.S.C. § 12112(a).

19. The effect of the practices complained of in paragraphs 12 through 18 above has been to deprive Amber Wilson, Stephanie Carter, and a class of presently unidentified individuals of equal employment opportunities and otherwise adversely affect their status as employees or their ability to become employees because of their disabilities, or because of Defendant's unlawful use of pre-offer medical inquiries.

20. The unlawful employment practices complained of in paragraphs 12 through 18 above were intentional.

21. The unlawful employment practices complained of in paragraphs 12 through 18 above were done with malice or with reckless indifference to the federally protected rights of Amber Wilson, Stephanie Carter, and a class of presently unidentified individuals.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in discrimination by refusing to hire qualified individuals with disabilities, from terminating qualified individuals with disabilities, and from conducting unlawful pre-offer medical inquiries.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant to make whole Amber Wilson, Stephanie Carter, and a class of unidentified individuals, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to instatement or reinstatement and front pay.

D. Order Defendant to make whole Amber Wilson, Stephanie Carter, and a class of presently unidentified individuals, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to licensing expenses, in amounts to be determined at trial.

E. Order Defendant to make whole Amber Wilson, Stephanie Carter, and a class of presently unidentified individuals, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Amber Wilson, Stephanie Carter, and a class of presently unidentified individuals, punitive damages for malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
ACTING GENERAL COUNSEL
WASHINGTON, D.C.

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL
WASHINGTON, D.C.

KENNETH L. BIRD
REGIONAL ATTORNEY
INDIANAPOLIS, INDIANA

OMAR WEAVER
ASSISTANT REGIONAL ATTORNEY
DETROIT, MICHIGAN

s/ Gena Miller
Gena Miller
Trial Attorney
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
(313) 774-0058 (Direct)
(313) 226-2778 (Facsimile)
Email: Gena.Miller@eeoc.gov

Attorneys for Plaintiff