**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | Case No. 1:23-cv-592 |
| Plaintiff, | Hopkins, J. |
| v. | Bowman, M.J. |
| THE PHOENIX CENTER INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the Equal Employment Opportunity Commission ("EEOC") initiated suit against Defendant The Phoenix Center, Inc. on September 19, 2023. On May 14, 2024, the presiding district judge referred the case to the undersigned to decide all discovery-related motions and issues. (Doc. 10). On May 24, 2024, the undersigned attempted to resolve the parties' dispute through an informal discovery conference. However, the undersigned granted leave to Plaintiff to file a written motion to compel should the EEOC remain dissatisfied with Defendant's supplemental responses.

Based on its belief that Defendant's production remains incomplete, the EEOC has now moved to compel further discovery. (Doc. 13). Defendant has filed a response in opposition, to which the EEOC has filed a reply. For the following reasons, the Court will **grant in part and deny in part** Plaintiff's motion to compel.

**I.     Background**

For context, the Court briefly reviews the parties' claims and defenses in this case.

1

Defendant describes itself as "an organization which provides treatment and recovery services for individuals suffering from substance abuse disorders, chemical addiction, and mental health disorders." (Doc. 14, PageID 131). In its complaint, the EEOC alleges that Defendant violated the Americans with Disabilities Act (the "ADA"), as well as Title I of the Civil Rights Act of 1991, when it engaged in unlawful employment practices by subjecting Amber Wilson to a pre-offer medical inquiry and by failing to hire her because of her disability, by terminating employee Stephanie Carter because of her alcohol addiction, and by subjecting additional unidentified applicants for employment to "unlawful pre-offer medical inquiries." (Doc. 1, PageID 1).

Defendant admits that it maintains "a policy and practice that if a given medication could not be taken by clients of the Phoenix, employees could not be on that medication either." (Doc. 14, PageID 132). After Ms. Wilson disclosed shortly before beginning employment that she had begun taking Gabapentin, a medication that Defendant's clients were not permitted to take, Defendant advised her of the referenced policy, she then allegedly "elected to rescind her acceptance" of Defendant's job offer rather than quit taking her medication. (*Id.*)

Defendant alleges that Ms. Carter suffered a relapse of her alcohol addiction during her employment and was encouraged to seek treatment. (Doc. 14, PageID 131). Defendant further asserts:

> [O]ne cannot effectively or credibly counsel clients suffering from chemical dependency issues on maintaining their sobriety while themselves in the midst of an active relapse on addictive substances. Thus, Ms. Carter resigned her position with The Phoenix Center, who informed her that she would be welcomed back as an employee following her treatment. Ms. Carter did not follow up with The Phoenix Center or attempt to return to employment there.

(Doc. 14, PageID 131-132). Notwithstanding the EEOC's references in its complaint to unidentified job applicants, Defendant characterizes this lawsuit as limited in scope to Ms. Wilson and Ms. Carter.

## II. Analysis of the EEOC's Motion to Compel

**A. Financial Requests (Interrogatory 5 and Request for Production 2)**

Interrogatory 5 seeks the following financial information:

a. State the dollar amount of Defendant's year end gross revenue for the years 2020 and 2021;

b. State Defendant's year-end profits (gross and net) for the years 2020 and 2021;

c. State the fair market value of Defendant's assets for the years 2020 and 2021;

d. Identify any and all documents that support these figures; and

e. Identify the individual(s) who can testify to the figures in subparts (a) through (c) above by providing each person's name, address, phone number and email address.

(Doc. 13-4, PageID 88-89). Request for Production 2 seeks the production of related financial documents, including "*all documents that support the dollar figures provided* in response to Interrogatory No. 5, including but not limited to signed and dated corporate tax returns (and all schedules and attachments), annual reports, financial statements and accounting records." (Doc. 13-4, PageID 90, emphasis added).

In response to both Interrogatory 5 and Request for Production 2, Defendant has produced copies of its 2020 and 2021 tax returns, but has refused to otherwise supplement its response(s). Defendant apparently has not identified any documents other than its tax returns that support its figures. See Interrogatory 5(d). Nor has Defendant identified the individuals who can testify to the figures as requested in Interrogatory 5(e).

The EEOC complains that the tax returns alone do not satisfy its Request for Production 2, which seeks "all" financial documents used to support the dollar amounts reported for year-end gross revenue, gross and net profits, and the fair market value of assets for 2020 and 2021. During depositions. Defendant's former officers testified that they prepared and emailed *monthly* profit and loss statements, which could be relevant to the "year-end" gross and net profit figures reported in response to Interrogatory 5(b).[1] Other testimony suggests that additional records exist, including annual reports, financial statements and accounting records.

In response to Plaintiff's motion, Defendant argues that the production of its tax returns is sufficient, because all of the requested dollar figures can be gleaned from the returns. But the Defendant's response ignores Interrogatory 5(d) and the fact that Request 2 expansively seeks "*all* documents that support the dollar figures… *including but not limited to*" other financial and accounting records. *Id.* Defendant therefore will be required to supplement its responses to Interrogatory 5(d) and (e) and to Request for Production 2.

**B. Request for Production 3 – Organizational Chart**

In Request 3, the EEOC asked Defendant to "[p]roduce any and all organizational chart(s) showing the hierarchy and structure of Defendant's office(s) from January 1, 2021, to the present." (Doc. 13-4, PageID 90). Defendant did not produce any charts until months after a response was due, and then produced only a single organizational chart that the EEOC has since learned is outdated. According to current employees, Defendant's practice is to make a current version of its organizational chart available to

---

[1] Assuming that monthly profit and loss statements "support" the year-end profit and loss figures, they would constitute responsive documents.

employee on its Bamboo or SharePoint system. Under Rule 26, Fed. R. Civ. P., Defendant has a continuing obligation to supplement discovery responses.

In its response in opposition to the motion to compel, Defendant asserts that its production of a single chart is sufficient because it does not keep historical versions of its organizational chart in the ordinary course of business, and cannot be compelled to produce older charts that it does not retain. But that explanation does not address Ms. Butterworth's deposition testimony that Defendant has had several organizational charts since she began working for them in January 2023, which she can request from BambooHR. In addition, Defendant does not explain its failure to produce additional versions of its organizational charts that have been revised or updated since its production of the single (now-outdated) chart.

To ensure adequate and complete production, Defendant will be required to submit an affidavit or Declaration of an appropriate record-keeper that no historical organizational charts can be produced that are responsive to the EEOC's request.[2] In conformity with its obligation to continually supplement its responses under Rule 26, Defendant also will be required to produce any versions of the organizational chart currently in existence.

**C. Interrogatory 8, and Requests for Production 4 and 11 – Personnel Files and Training Materials**

Interrogatory 8, which sought contact information for former employees, appears to have been recently answered. (*See, e.g.*, Doc. 14, PageID 145; Doc. 15, PageID 173, n.1). In addition, Defendant recently supplemented its responses to the EEOC's Request

---

[2] In other words, Defendant will be required to produce any historical charts that can be generated through the Bamboo or SharePoint system.

5

for Production 4 (pertaining to the missing personnel files employees Alison Ellis[3] and Teresa Everhart), and to Request for Production 11 (training materials). Notably, Defendant did not complete the referenced additional supplemental responses following the Court's informal discovery conference, but produced the long-requested information only *after* the EEOC filed its motion to compel,

### D. Requests for Production 14 and 15 – Electronic Communications

The EEOC seeks further production of certain electronic communications regarding Amber Wilson and Stephanie Carter. Specifically, Request for Production 14 seeks "any and all electronic communications regarding Amber Wilson, including but not limited to e-mail, instant messages and/or text messages to or from the following custodians from July 1, 2021-November 1, 2021: a. Samantha Lomske, b. Raejean Noble, c. Ashlee Carrico, d. Linda Adkins, e. Eddie Philabaun, f. John Adkins, and g. Shannon Bishop." In Request for Production 15, the EEOC asked for the same category of "electronic communications… regarding Stephanie Carter's allegations that a colleague sexually harassed and stalked her, her relapse, her hospitalization, or Defendant's decision to end her employment to or from the following custodians from August 1, 2021-December 31, 2021: a. Ashlee Carrico, b. Erika Bowman, c. Charlie Gorman, d. Morgan Larkin, e. Eddie Philabaun, f. John Adkins, and g. Shannon Bishop."

The EEOC challenges Defendant's responses to both Requests 14 and 15 as incomplete based on the limited production that has been made to date. For example, no "Teams" messages were produced, which should have been included.[4] In addition, the

---

[3] To be fair, the failure to produce the record of Ms. Ellis was due *in part* to a misspelling of her first name by the EEOC.
[4] Ms. Butterworth testified that she did not search Teams messages, and did not know if anyone else had conducted a search of Teams.

limited material that was produced strongly supports the inference that other responsive documents exist that have not yet been produced. As the EEOC explains:

> Defendant produced excerpts of emails between Samantha Lomske, Linda Adkins, and Ashlee Carrico, regarding Defendant's decision not to hire Amber Wilson. However, Defendant failed to provide the entire email thread in native format. Defendant's response to Interrogatory 2 lists Eddie Philabaun as the decisionmaker in the termination of Stephanie Carter's employment and it produced several emails about Ms. Carter's relapse, emails which Philabaun received. See Ex. 5 at 3. But Defendant has not produced any emails that Mr. Philabaun sent regarding the termination of Ms. Carter's employment. In response to Interrogatory 3, Defendant also indicated that Mr. Philabaun made "the ultimate decision" not to hire Ms. Wilson, but Defendant did not produce any emails Mr. Philabaun received or sent on that decision either.

(Doc. 13, PageID 64-65). In other words, Defendant failed to produce native emails from Ms. Lomske, the custodian who communicated directly with Wilson, and also produced only a small number of emails from Mr. Philabaun that did not include messages one would have expected to see given he was identified as the ultimate decisionmaker.[5]

The EEOC also persuasively argues that Defendant's self-collection of responsive documents has been deficient. Ms. Butterworth (Human Resources Manager) and Ms. Cremeans (CEO) were identified as the sole "persons who prepared or assisted in the preparation" of Defendant's discovery responses. (Doc. 13-6, PageID 109). Defense counsel did not supervise Defendant's collection of ESI but did suggest search terms, without conferring with or disclosing the same to Plaintiff's counsel.

But during her July 18, 2024 deposition, Ms. Butterworth testified it was Defendant's prior HR Director, Ms. Carrico, who searched for emails and compiled the

---

[5]The EEOC also points to troubling testimony from Ms. Cremeans that there was a mass deletion of Mr. Philabaun's emails. Both Ms. Cremeans and Ms. Bishop testified that they had not searched former employees' emails, so the EEOC has no way to determine whether relevant emails were deleted after a duty of preservation arose.

ESI after counsel forwarded the requests. Ms. Butterworth signed the ultimate production but did not check Ms. Carrico's collection for completeness. In contrast to that testimony, Ms. Carrico testified that she had never seen the EEOC's discovery requests because she separated from employment on March 13, 2024, the day *before* the EEOC served its requests. Ms. Cremeans agreed that Ms. Carrico did not work on responses to the discovery requests, but only compiled responses to requests for information during the EEOC's *pre-suit* investigation. It is unclear who compiled any subsequent discovery responses. In short, despite being identified as the persons responsible, neither Ms. Butterworth nor Ms. Cremeans assisted Ms. Carrico's production of ESI, nor did they know what terms were used in Defendant's search, or the number of responses yielded.

In addition, to the extent that Ms. Carrico was responsible for the production of discovery (a fact not previously disclosed and inconsistent with her separation date), her unsupervised collection is problematic because she was involved in many of Defendant's actions that form the basis of the alleged discrimination. For example, "Ms. Carrico provided input into the decision not to hire Ms. Wilson and she is also included on several emails about Ms. Carter's termination." (Doc., 14, PageID 62). "Simply relying on a client's say so may not be reasonable" when it comes to ensuring "that appropriate sources of data have been searched and that responsive ESI has been collected." *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021) (collecting cases); *see also Lyman v. Ford Motor Co.*, 344 F.R.D. 228, 230 (E.D. Mich. 2023) ("an attorney may not simply rely on custodian self-collection of ESI") (quoting *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021)). "Instead, counsel must test the accuracy of the client's response to document

requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected - and eventually reviewed and produced." *Id.*.

In its response in opposition to the EEOC"s motion to compel, Defendant argues that its responses should be deemed sufficient because it produced responses to the EEOC's requests during the pre-suit investigation, (*see generally*, Doc. 14, Exh. 4, Discovery Reponses, PageID 162-172), as well as some additional documents after suit was filed. (*See* Doc. 14, Exh. 3, PageID 157-158). But that response does not address the EEOC's well-founded concerns.

Defendant will be required to substantially supplement its responses to Requests for Production 14 and 15. As the EEOC points out, its pre-suit request did not specifically seek emails regarding Ms. Wilson. (*Compare* March 7, 2022, Resp. to Req. for Information, Doc. 14, PageID 169-72 with Doc. 13-4, PageID 93.). Additionally, the EEOC's post-suit Request for Production 15, for electronic communications regarding Stephanie Carter, is much broader in scope and in the identified custodians than its pre-suit request for communications regarding "the end of Ms. Carter's employment from Mr. Gorman, Ms. Larkin, and Ms. Bowman."

### E.  Request for Production 17 – Current Financial Data

Last, the EEOC seeks to compel additional financial records in response to Request for Production 17, which seeks "signed and dated tax returns (and all schedules and attachments), annual reports and financial statements from 2020 through the present." (Doc. 13-4, PageID 94). As previously noted, Defendant produced only its 2020 and 2021 tax returns. That is not sufficient, because the EEOC specifically asked for additional financial records, including annual reports and financial statements through the

9

present day. Ms. Butterworth testified that she believed that the Defendant's CEO and Compliance and Risk Director would have records of expenses, income and profits. Additionally, Defendant is currently engaged in breach-of-contract litigation in state court. *See The Phoenix Center, Inc. v. Charles E. Philabaun, III*, 24 OC 000234 (Lawrence County, Ohio). In that litigation, the parties indicate that certain employment contracts contained a provision specifying that bonuses were to be calculated based on measurements of the Phoenix Center's profitability – a fact that implies that Defendant maintains additional financial records relating to net and gross profitability.

In opposition to the motion to compel, Defendant now argues (for the first time) that the additional documents are not relevant, because with respect to Ms. Wilson and Ms. Carter, all "relevant events …occurred in 2021." (Doc. 14, PageID 136). But Defendant has arguably waived this objection by failing to raise it at an earlier date. In any event, the EEOC has adequately explained the relevance of Defendant's more recent tax returns and financial information to the issue of punitive damages. *See*, *e.g.*, *E.E.O.C. v. Eden Foods, Inc.*, No. 2:22-CV-10881, 2023 WL 10677858, at *4-6 (E.D. Mich. Jan. 5, 2023) (granting the EEOC's motion to compel Defendant's financial records of the three most recent years). Therefore, the Court will require Defendant to produce tax returns for 2022 and 2023, as well as annual reports and financial statements from 2020 through the present.

### III.     Conclusion and Order

For the reasons stated, **IT IS ORDERED:**

1. Plaintiff's motion to compel (Doc. 13) is GRANTED in part as follows:

    a. Defendant shall fully respond to Interrogatory 5(d) and (e) and to Request for Production 2;

    b. Defendant shall more fully respond to Request for Production 3 by producing any additional responsive historical organizational charts that can be generated through the Bamboo or SharePoint systems, as well as any versions of organizational charts that have superseded the single chart previously produced;

    c. Based upon the deficiencies identified including the lack of prior supervision and transparency of how ESI was collected, Defendant shall repeat its prior collection of responses to Requests for Production 14 and 15. In repeating its collection and transmission of responsive ESI, it shall confer with and identify to the EEOC the search terms used in the compilation, as well as the employee(s) who are tasked with compiling the responsive documents;

    d. Defendant shall supplement its prior response to Request for Production 17 by producing tax returns and all schedules and attachments for 2022 and 2023, as well as additional annual reports and financial statements from 2020 through the present;

    e. Defendant shall provide Plaintiff with signed, written responses to each Request for Production that specify the documents responsive to each request;

2. Defendant shall complete the supplementation of its discovery responses within fourteen (14) days of this Memorandum Opinion and Order;

3. The parties shall meet and confer and file any motion seeking an extension of existing deadlines, including the dispositive motion deadline, on or before October 23, 2024;

4. Defendant shall pay costs and attorney's fees associated with the EEOC's formal written motion to compel, as follows:

   a. The EEOC shall submit a record of its costs and fees, up to but not exceeding $15,000, within twenty-one (21) days of the date of this Order;

   b. Within ten (10) days following service of the EEOC's submission of its costs, Defendant may file any particularized objections thereto;

   c. Within five (5) days following service of any objections, the EEOC may file any reply in support of its record of costs and fees.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge